STATE OF VERMONT

ENVIRONMENTAL COURT

|  | } |  |
| --- | --- | --- |
| Appeal of Lovell | } | Docket No. 194-10-04 Vtec |
|  | } |  |
|  | } |  |

<u>Decision and Order on Appellant's Motion for Partial Summary Judgment</u>

Appellant-Applicant Raymond Lovell appealed from a decision of the Zoning Board of Adjustment (ZBA) of the Town of Maidstone denying a permit to subdivide a ninety-acre parcel on the easterly side of Vermont Route 102 into three parcels of forty-four acres, forty acres, and six acres. Appellant is represented by Deborah T. Bucknam, Esq.; the Town of Maidstone is represented by Robert A. Gensburg, Esq.

Appellant has moved for partial summary judgment. The following facts are undisputed unless otherwise noted. All section references are to the Zoning Bylaw and Subdivision Regulations (the Bylaw), unless otherwise noted.

Appellant owns a ninety-acre parcel of land in the Agricultural zoning district westerly of the Connecticut River and easterly of Vermont Route 102. The Agricultural zoning district is defined as "the land along the Connecticut River as indicated on the

official zoning map;" however, neither party has provided a copy of the official zoning map showing the district. Based on Exhibit 2 to Appellant's affidavit, it appears that most of the land between Route 102 and the river is actually zoned Rural Lands-1 (RL-1), and that only Appellant's property and two small parcels of land owned by James Fay and Robert Value, respectively, are zoned Agricultural, although most of the RL-1 land easterly of the road is in fact in agricultural use. Appellant's easterly property line curves along the river. A loop of the river extends into Appellant's property and has created an island.

Appellant proposes to divide the property into three parcels. The proposed forty-acre parcel is the most southerly and consists of the land south of the island; the proposed six-acre parcel is in the middle and includes the island, and the proposed forty-four-acre parcel consists of the land northerly of the island.

All that Appellant is proposing is to subdivide his property; he does not at this time propose any particular use of the subdivided lots. He submitted an application to the Zoning Administrative Officer on the form for a zoning permit (§702.03), rather than submitting an application requesting minor subdivision approval (§502.01). No party has suggested that there is any separate form for submitting a subdivision application, nor does the zoning permit application form provide a box to check off for subdivision approval of a minor subdivision by the Zoning Administrative Officer. Appellant's application form stated that the proposed use is both residential and agricultural, but did not propose any

new construction, which suggests that an existing house may be located on the property. However, material facts have not been provided to the Court regarding whether any existing structures exist on the property.

The Town of Maidstone may have initially intended to use its Agricultural zoning district in the way that some other towns use a flood hazard overlay district, to restrict development in areas prone to flooding. Indeed, an earlier proposal in late 1998 for the proposed zoning map, provided as an attachment to Appellant's affidavit, shows most of Appellant's and others' land in the floodplain of the river as a proposed "flood zone" except for a small amount of land close to Route 102 , which was proposed to be zoned Rural Lands 1. However, if the Agricultural district is accurately reflected in the attachment to Appellant's affidavit, it appears that it does not apply generally to the Connecticut River Valley floodplain.

In the Agricultural zoning district, only three permitted uses are allowed, and there is no provision for any conditional uses. The allowed permitted uses are only "agricultural use" and "primary forestry operation," with "home occupations" being allowed as permitted uses only in existing dwelling units.[1] §203, Table 203.07. Because no new buildings

---

[1] Oddly, it does not provide for residential uses as allowed uses in existing dwelling units, so that all existing dwelling units became existing non-conforming uses in the Agricultural zoning district upon the adoption of those regulations in July of 2002 (or at whatever earlier date those particular provisions were adopted).

(other than exempt agricultural structures) are allowed, unlike in other zoning districts, the Agricultural zoning district had no minimum dimensional requirements for lot size, road frontage, or building setbacks. §203, Table 203.07. However, nothing in §203 or in the sections governing subdivisions, §§501-506, prohibits the subdivision of land in the Agricultural zoning district, as long as it is kept in the allowed agricultural or forestry uses.

Appellant submitted the application to the Town Clerk on June 3, 2004, rather than to the Zoning Administrative Officer; the Zoning Administrative Officer did not receive the application until June 8, 2004. After informing Appellant that the Bylaw did not contain a provision for subdividing land in the Agricultural zoning district and after contacting Appellant three times by telephone regarding whether he intended to withdraw his application and receive a refund of the filing fee, the Zoning Administrative Officer acted to deny the application on July 7, 2004. Appellant filed a timely appeal of that decision to the ZBA on July 22, 2004.

The ZBA considered the matter at a September 13, 2004 meeting; however, the parties have not provided the warning for or the minutes of that ZBA hearing. While Appellant's statement of undisputed facts simply states that no explanation was contained in the minutes, it would have been helpful to know how that hearing was warned and how the vote was proposed, as the denial letter dated September 21, 2004, refers to Appellant's having requested a variance from the ZBA. The denial letter states the ZBA's

findings that the variance criteria were met, but appears to have denied the request for the subdivision permit on the same basis as the Zoning Administrative Officer: that no provisions in the Bylaw allows subdivision of agricultural land. The present appeal is from that action of the ZBA.

In March of 2005, the Zoning Bylaw was amended to provide for a minimum lot size of fifteen acres and a minimum road frontage of 800 feet in the Agricultural Zoning district. Appellant had no obligation to reapply under the changed regulations, and declined to adjust his proposed subdivision to bring the middle parcel up to a fifteen-acre size that would have qualified for approval under the amended regulations.

Appellant first argues that his application for approval of a minor subdivision should be deemed to have been approved because he submitted the application to the Town Clerk on June 3, 2004 and the Administrative Officer did not act to deny the application until July 7, 2004, exceeding the thirty-day period for an Administrative Officer's decision on an application for a zoning permit contained in §702.04, and see 24 V.S.A. §4464(a) (in effect[2] until July 1, 2004).

First, as the application under consideration by the Zoning Administrative Officer

---

[2] A similar provision was carried forward into the revised statute, at 24 V.S.A. §4448(d); however, the former statute was applicable as of June 3, 2004, the triggering date for the running of the thirty-day period.

was for minor subdivision approval and was not a zoning permit application, it is not clear to the Court that the thirty-day period for Administrative Officer action on a zoning permit in §702.04 even applies to this application. Nor does §702.04 contain a deemed approval provision for exceeding the thirty-day period.

Even assuming that 24 V.S.A. §4464(a) (in effect until July 1, 2004) provided a deemed approval remedy for an administrative officer's failure to act on an application for minor subdivision approval that is not also an application for a zoning permit, the Zoning Administrative Officer's action was timely if measured from the date on which he received the application. He was cognizant of the time deadline, as shown by his calls to Appellant stating that he would have to issue his ruling. Moreover, even if the time were calculated from the June 3, 2004 date on which the application was submitted to the Town Clerk, due to the July 4 holiday weekend, the 30-day period would not have expired until July 6, 2004. A one-day delay, under the circumstances, would not represent the type of "deliberate or negligent" administrative inaction or delay that might warrant the deemed approval remedy. In re Appeal of McEwing Services, 2004 VT 53, ¶ 21.

Appellant next argues that his application for a minor subdivision should have been approved on its merits. There is no question that the proposal falls within the definition of a minor subdivision in §602 (division of a parcel into "not more than three improvable

lots"); "improvable lot" in turn is defined as a lot conforming with the minimum area and dimensional requirements for the district (and any pre-existing nonconforming lot). Similarly, under the minor subdivision requirements of §502.01, a minor subdivision must meet the minimum area and dimensional requirements of the Bylaw. §502.01(A).

Because the Bylaw in effect when Appellant filed his application imposed no minimum area or dimensional requirements in the Agricultural zoning district, Appellant's three-lot subdivision application met the requirements of the Bylaw. The fact that the Bylaw prohibits the construction of permanent non-agricultural structures in the Agricultural zoning district, including the construction of new houses, does not prevent Appellant from subdividing his property as proposed.

The fact that the Bylaw was later amended to require a minimum lot size in the Agricultural zoning district may mean that the resulting six-acre lot would have become a pre-existing non-conforming lot with respect to the new lot size requirements, but that fact does not prohibit Appellant from making that division based on an application filed in good faith before the change was proposed.

Finally, Appellant argues that the Town engaged in 'illegal reverse spot zoning'[3][3]

_____

[3][3]    Spot zoning "singles out a small parcel or perhaps even a single lot for a use classification different from the surrounding area and inconsistent with any comprehensive plan, for the benefit of the owner of such property," Granger v. Woodford, 167 Vt. 610, 610–11 (1998)

when it originally adopted the ordinance creating the Agricultural zoning district. However, in the present appeal Appellant does not seek to invalidate the Agricultural zoning district per se, but rather to argue that the proposed subdivision should have been approved. As an alternative to the spot zoning analysis, Appellant argues for application of the analysis in In re Letourneau, 168 Vt. 539, 549 (1998) in support of his claim that his property has been singled out illegally. However, the selective enforcement analysis discussed in Letourneau is only applicable in the context of an appeal of a notice of violation or an enforcement action.

---

(citing Galanes v. Town of Brattleboro, 136 Vt. 235, 239 (1978)), or, as argued here, to the detriment of the owner. The courts examine the use of the parcel in comparison with the prevailing use of other parcels in the area; the size of the parcel relative to the size of the challenged district; whether the classification is for the benefit of the community or only to provide a specific advantage or disadvantage to a particular landowner; and whether the challenged zoning classification complies with the municipality's plan.

In any event, because we have ruled that the subdivision approval should have been granted, in the present appeal it is not necessary to reach the constitutional issue inherent in a claim of spot zoning or any other formulation of a denial of equal treatment under the law. However, we note that the issue may arise again should Appellant seek to construct residences on any of the resulting parcels, or to expand any existing residence, as the Agricultural zoning district requirements preclude such action. In connection with both parties' analysis of whether the Agricultural zoning district may be vulnerable to such a claim, we note that under 24 V.S.A. §4472(b), as amended in 2004, such a constitutional claim may be raised independently in superior court, in advance of any zoning application; but that it may only be addressed in this court in the context of an appropriate case, such as an appeal from a permit denial.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that Appellant's motion for partial summary judgment is GRANTED in part, in that Appellant's application for subdivision approval should have been and is hereby GRANTED; it is otherwise DENIED on the issues of deemed approval, spot zoning, and selective enforcement.

This decision appears to conclude the issues in the appeal. If the parties believe that any issues remain, please advise the Court in writing and a telephone conference will

be scheduled to discuss what issues, if any, remain to be scheduled for trial.

Done at Berlin, Vermont, this 6th day of September, 2005.

_____

Merideth Wright

Environmental Judge